**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

RUSSELL LEE CUNNINGHAM
fdba RUSBUILT RODS

        Debtor

JOHN P. NEWTON, TRUSTEE

        Plaintiff

        v.

RUSSELL LEE CUNNINGHAM

        Defendant

Case No. 3:20-bk-32285-SHB
Chapter 7

Adv. Proc. No. 3:21-ap-3041-SHB

**M E M O R A N D U M**

**APPEARANCES:**    MAYER & NEWTON
        John P. Newton, Jr., Esq.
        1111 Northshore Drive
        Suite S-570
        Knoxville, Tennessee 37919
        Attorneys for Plaintiff

        WILLIAM E. MADDOX, JR., LLC
        William E. Maddox, Jr., Esq.
        Post Office Box 31287
        Knoxville, Tennessee 37930
        Attorneys for Defendant

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Plaintiff filed the Complaint commencing this adversary proceeding on August 26, 2021 [Doc. 1], asking the Court to revoke Defendant's discharge that was entered on January 22, 2021, under 11 U.S.C. § 727(d).  Defendant answered on October 4, 2021 [Doc. 9], denying Plaintiff's allegations and entitlement to the relief sought.  The trial of this adversary proceeding was held May 9, 2022, and the record before the Court consists of fourteen stipulated facts as reflected in the Joint Statement of Issues and Undisputed Facts ("Joint Statement") filed on April 29, 2022 [Doc. 16]; twelve exhibits, as supplemented on May 12 and May 20, 2022, respectively [Docs. 17, 22, 23]; and the testimony of the parties.  The Court also takes judicial notice of all documents of record in this adversary proceeding and in Defendant's underlying Chapter 7 bankruptcy case, No. 3:20-bk-32285-SHB.[1]  *See* Fed. R. Evid. 201.  This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (J), and (O).

## I. FINDINGS OF FACT

Defendant filed the Voluntary Petition to commence his Chapter 7 bankruptcy case on October 6, 2020, and Plaintiff was appointed as Chapter 7 Trustee. [Jt. Stmt. at ¶¶ 1, 13.] Defendant filed with his petition the statements and schedules required by 11 U.S.C. § 521, including a Statement of Financial Affairs ("SOFA"). [Jt. Stmt. at ¶ 2; Trial Ex. 1.]  In response to Question 18 of the SOFA, concerning transfers of property within the previous two years, Defendant disclosed transfers of a 2005 GMC Sierra Denali and a 2004 Ford F250 Diesel, but he did not disclose the transfer of any real property to any person. [Jt. Stmt. at ¶ 6; Trial Ex. 1 at p. 13.]  Additionally, Defendant did not disclose any closed financial accounts in response to Question 20 of the SOFA. [Trial Ex. 1 at p. 13; *see also* Jt. Stmt. at ¶ 10.]

---

[1] Any references to documents in Defendant's bankruptcy case will be denoted as "Cunningham Doc. ___."

At his meeting of creditors held on November 10, 2020, when questioned by Plaintiff about transfers in the two years before filing, Defendant testified about two vehicles that he transferred, including a vehicle that was sold to his father "years ago,"[2] but he did not disclose that he had transferred any real property. [Jt. Stmt. at ¶ 11; Trial Ex. 4 at 1:08-2:26.] Concerning bank accounts, Defendant testified that he had an account with Regions Bank for his business that was closed and that he was then banking with ORNL Federal Credit Union. [Trial Ex. 4 at 4:07-5:42.] He also testified that he had read his statements and schedules before filing them and that they were true and accurate. [*Id*. at 6:22-6:34.] Defendant received his discharge on January 22, 2021. [Trial Ex. 9.]

On February 6, 2021, Plaintiff learned that, prepetition, Defendant and his spouse, Ashley Cunningham ("Ms. Cunningham"), sold a house and lot located at 8123 Robins Nest Lane, Knoxville, Tennessee ("Robins Nest Property"), and netted proceeds of $82,692.14. [Jt. Stmt. at ¶¶ 5, 12; Trial Ex. 8.] The sale proceeds were deposited into a joint bank account at Bank of America ("BoA Account") from which Defendant and Ms. Cunningham withdrew funds until the account was closed prepetition. [Jt. Stmt. at ¶ 9; Trial Ex. 7.]

Plaintiff conducted a Rule 2004 examination of Defendant on March 26, 2021, at which Defendant testified that after he and Ms. Cunningham (who were still married, with no plans to divorce, as of the trial in this matter) transferred the Robins Nest Property in July 2019, the sale proceeds of more than $80,000.00 were deposited into Ms. Cunningham's account, and Defendant received $15,000.00. [Trial Ex. 5 at 3:50-4:12; 4:22-6:10; 16:20-16:48.] Defendant testified that Ms. Cunningham primarily paid all of the bills while Defendant was trying to get

---

[2] Defendant scheduled the transfer to his father as having occurred in May 2020, but he testified, "There's one listed that's an F250. I actually sold that to my dad some years ago, but there was a concern that he never actually got the title swapped out of my name, so that is why that one is listed." [Trial Ex. 4 at 1:08-1:35.]

his business running and she paid for materials to renovate the Robins Nest Property, with Defendant performing the labor. Thus, they had agreed that the sale proceeds would be repaid to Ms. Cunningham for her "investment" in the property, and they would evenly split the $30,000.00 profit above her investment. [*Id*. at 6:10-7:50.] When asked by Plaintiff why he did not list transfer of the Robins Nest Property in his SOFA, Defendant testified that the online bankruptcy paperwork he had completed had only requested a one-year lookback, so he did not list the transfer. [*Id*. at 11:13-11:46; 18:10-19:06.] Defendant acknowledged that his 2019 tax return did not include any information about the sale of the Robins Nest Property, and he could not recall if the mortgage company sent him any documentation for his taxes. [*Id*. at 21:05-21:52.] Defendant also testified at the Rule 2004 examination that he "was pretty sure" that he had read his statements and schedules before going into his attorney's office and signing them; that he "must have overlooked" that it asked for a two-year lookback period because he was looking to be sure that his information "was correct" and "there were a couple of things that were not on there" or in the wrong place; and that he "probably didn't read them as closely as [he] should have." [*Id*. at 11:46-12:10; 19:06-19:55; 33:05-33:40.]

      When Plaintiff questioned Defendant at the Rule 2004 examination about the BoA Account, Defendant testified that the account belonged to Ms. Cunningham and that he was "placed on" the account to deposit the proceeds from the sale of the Robins Nest Property because the check was payable to both him and Ms. Cunningham but that he was "removed" from the account. [*Id*. at 16:52-17:28.] He also testified that he did not include any bank accounts – including the BoA Account – in his SOFA because he "didn't close any accounts as far as physically going and closing any accounts" but that his Regions accounts were "shut down" because he could not catch them up. [*Id*. at 23:45-24:51; 25:40-25:55.] When asked

about his responses to Plaintiff's questions at the meeting of creditors, Defendant did not remember a question about the amount of time being two years or about transferring his vehicles, but he remembered being asked if the information was true to the best of his knowledge. [*Id*. at 19:55-21:06.]

One week after the Rule 2004 examination, Defendant filed an Amended Statement of Financial Affairs ("April 2 Amended SOFA"), reflecting in response to Question 18 that he transferred "real property at 8123 Robins Nest Lane Knoxville TN 37919" to Nicholas and Emily Woodrum on July 22, 2019, and that the "house was sold for $277,000. Debtor netted $15,000 after sale. Debtor owned house with ex wife[.]" [Jt. Stmt. at ¶ 3; Trial Ex. 2 at p. 5.] Later in April, Defendant filed a second Amended Statement of Financial Affairs ("April 27 Amended SOFA"), reflecting the same information in response to Question 18. [Jt. Stmt. at ¶ 4; Trial Ex. 3 at p. 5.] Neither amendment discloses the closed BoA Account, and both reflect that Defendant received proceeds of only $15,000.00 from the sale of the Robins Nest Property. [Jt. Stmt. at ¶ 10; Trial Ex. 2 at p. 5; Trial Ex. 3 at p. 5.]

During discovery in this case, Plaintiff took Defendant's deposition on March 7, 2022, at which Defendant acknowledged the inaccuracy of his testimony at his meeting of creditors that he had not transferred any real property within the two years before filing his case and that the April 2 Amended SOFA inaccurately identified Ms. Cunningham as his ex-wife because they were still married). [Trial Ex. 6 at 8:25-9:19; 10:3-12:6; 20:25-21:5.] Defendant also testified that he read and signed his original statements and schedules, the April 2 Amended SOFA, the April 27 Amended SOFA, and answers to interrogatories in this case. [*Id*. at 14:9-14:16; 17:9-17:23.] He reiterated that he was added to the BoA Account after sale of the Robins Nest Property specifically so that they could deposit the sale proceeds. [*Id*. at 16:13-16:25; 20:22-

20:24.] Defendant also testified that "since [their] names were on it," he and Ms. Cunningham "both had to go in to close the [BoA Account.]" [Id. at 24:16-24:18.]

Plaintiff compromised his claim against Ms. Cunningham for her portion of the sales proceeds and received $26,346.00 for benefit of Defendant's bankruptcy estate. [Jt. Stmt. at ¶ 14; Cunningham Doc. 40.] He filed this adversary proceeding to revoke Defendant's discharge under § 727(d) because Defendant did not disclose the Robins Nest Property sale and the closed BoA Account. [Jt. Stmt. at ¶ 13; *see* Doc. 1.]

## II. CONCLUSIONS OF LAW

The parties defined the issue as whether Plaintiff is entitled to set aside Defendant's discharge pursuant to 11 U.S.C. § 727(d) [Doc. 16], which states, in material part, that "the court shall revoke a discharge granted under [§ 727(a)] if – (1) such discharge was obtained through the fraud of the debtor and the requesting party did not know of such fraud until after the granting of such discharge[.]" Because one of the fundamentals of bankruptcy is to provide "the honest but unfortunate debtor" a fresh start through discharge, revocation of discharge is "an extreme remedy to be awarded only where the debtor's conduct was egregious." *Gargula v. Poole (In re Poole)*, Case No. 17-69656-WLH, Adv. Proc. No. 19-5096, 2021 WL 5441748, at *7 (Bankr. N.D. Ga. Nov. 19, 2021) (citations omitted); *see also Buckeye Ret. Co. v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003).

> Notwithstanding that the Court should construe the facts liberally in favor of the debtor,
> 
> the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. . . . "[T]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to

make a full disclosure." Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*McDermott v. Dunne (In re Dunne)*, Case No. 15-33831, Adv. Proc. No. 16-3105, 2017 WL 1190611, at *2-3 (Bankr. N.D. Ohio Mar. 29, 2017) (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987) (citations omitted)).

Setting aside discharge under § 727(d)(1) requires proof that Plaintiff was unaware of Defendant's fraudulent acts or omissions[3] and that Defendant's discharge would have been denied because of said fraud, not merely that a single obligation would have been nondischargeable. *In re Heil*, 289 B.R. at 903 (citations omitted); *see also In re Poole*, 2021 WL 5441748, at *7 ("Courts frequently find that the fraudulent intent required for sections 727(a)(2) and (a)(4) is sufficient to revoke a discharge under section 727(d), provided that such fraud is directed at the estate, the Trustee, or the bankruptcy process, and not just at a creditor."); *Brothers v. Maddox (In re Maddox)*, 574 B.R. 127, 131 (Bankr. E.D. Tenn. 2017) ("The types of fraud that would have prevented the Defendant[] from receiving a discharge in the first place are contained in section 727(a)."). "The critical element is proving intent, and credibility is a critical aspect of every § 727 case." *J&R Inv. Co. v. Anthony (In re Anthony)*, 515 B.R. 831, 836 (Bankr. D. Utah 2014) (citations, footnote, and internal punctuation omitted). Finally, Plaintiff bears the burden of proof by a preponderance of the evidence. *In re Heil*, 289 B.R. at 903 (citations omitted); *see also* Fed. R. Bankr. P. 4005.

Plaintiff seeks revocation of Defendant's discharge under § 727(a)(4); i.e., Plaintiff asserts that Defendant knowingly and fraudulently failed to disclose the sale of the Robins Nest Property or the BoA Account and made intentional and fraudulent misstatements concerning the

---

[3] The parties have stipulated that Plaintiff did not learn about the sale of the Robins Nest Property until February 6, 2021. [Jt. Stmt. at ¶ 12.]

amount of proceeds received from the sale and the fact that Ms. Cunningham was his "ex-wife." Under § 727(a)(4), Plaintiff must prove that Defendant made false statements under oath, that Defendant new the statements were false when he made them, that Defendant fraudulently intended to make the statements, and that the statements materially related to the bankruptcy case. *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr. E.D. Tenn. 2006). Affirmative false statements and omissions fall within the scope of § 727(a)(4), *Coleman v. McLean (In re McLean)*, No. 11-34791, Adv. Proc. No. 12-3057, 2013 WL 5863718, at *3 (Bankr. E.D. Tenn. Oct. 30, 2013), and include statements and omissions in a debtor's statements and schedules, in any Rule 2004 examination, and at the meeting of creditors. *Church Joint Venture LP v. Blasingame (In re Blasingame)*, 559 B.R. 692, 697 (B.A.P. 6th Cir. 2016).

Whether a debtor has made a false oath under section 727(a)(4) is a question of fact." *Vara v. Spanabel (In re Spanabel)*, 618 B.R. 495, 507 (Bankr. E.D. Mich. 2020). "'Complete financial disclosure' is a prerequisite to the privilege of discharge," and the intent to defraud may be inferred from material misrepresentations or omissions, or reckless disregard for the veracity of a representation. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000). "Courts may deduce fraudulent intent from all the facts and circumstances of a case." *Id.* at 686 (quotation marks and citation omitted). Also, "[c]ourts look for a 'pattern of recklessness' through the existence of multiple inaccuracies or falsehoods constituting indifference to trust as evidence of fraudulent intent [and f]ailure to provide credible explanations for errors and omissions will weigh against the defendant." *Myka Ventures, Inc. v. Christian (In re Christian)*, 615 B.R. 240, 248 (Bankr. M.D. Tenn. 2020) (citations omitted). "Fraudulent intent can be found based on the cumulative effect of a series of innocent mistakes which evidence a pattern of

reckless and cavalier disregard for the truth." *McDermott v. Wise (In re Wise)*, 590 B.R. 401, 437 (Bankr. E.D. Mich. 2018) (citations and internal punctuation omitted).

On the other hand, false statements or omissions that result from ignorance or carelessness do not satisfy the requirements for proof that the debtor knowingly and fraudulently made false oaths. *Roberts v. Oliver (In re Oliver)*, 414 B.R. 361, 374 (Bankr. E.D. Tenn. 2009) (stating that the exceptions to discharge are in place to prevent abusive debtor conduct). Whether a statement or omission is material, courts look beyond "the value of the omitted assets or whether the omission was detrimental to creditors." *McDermott v. Kerr (In re Kerr)*, 556 B.R. 343, 349 (Bankr. N.D. Ohio 2016) (citations omitted). Instead, statements and/or omissions are material if they relate to the debtor's bankruptcy estate or "the discovery of assets . . . or the existence and disposition of his property." *In re Keeney*, 227 F.3d at 686 (citations and internal quotation marks omitted).

Here, the Court has no difficulty finding that Defendant misstated and omitted information in the SOFA and both amendments thereto and at his meeting of creditors, when he (1) did not disclose the sale of the Robins Nest Property or the closed BoA Account; (2) referred to Ms. Cunningham as his "ex-wife"; and (3) misstated the amount of the proceeds realized when he and Ms. Cunningham sold the Robins Nest Property. Clearly, these statements materially related to Defendant's bankruptcy case, and, in fact, Plaintiff's discovery resulted in recovery of assets for the benefit of creditors once Ms. Cunningham returned a portion of the sale proceeds to the bankruptcy estate. Accordingly, the only real question is whether Defendant knew the statements were false and whether he made them with fraudulent intent.

At trial, Defendant argued that his misstatements and omissions were not abusive or made with "reckless disregard" but were based on his mistaken belief that the lookback period

for transfers was only one year, not two.  He also argued that as of the trial he had provided Plaintiff with all information that he had requested and that Plaintiff cannot meet his burden of proving by a preponderance of the evidence that Defendant acted fraudulently or with the requisite fraudulent intent.  Plaintiff argued that not only did Defendant fail to disclose the sale of the Robins Nest Property in his SOFA and at his meeting of creditors, but even after the sale was discovered and after Plaintiff conducted Defendant's Rule 2004 examination, in both Amended SOFAs, Defendant still falsely claimed that his "net" from the sale was only $15,000.00 instead of the actual $82,692.14 that he and Ms. Cunningham received and deposited into the joint BoA Account.

On review of the record as a whole – including Defendant's testimony at his Rule 2004 examination, during his March 7, 2022 deposition, and at trial – the Court finds that Plaintiff has met his burden of proof of Defendant's fraudulent intent by a preponderance of the evidence. Although Defendant's failure to initially include the sale of the Robins Nest Property in his first SOFA may have been based on Defendant's mistaken belief that the lookback period was only one year, the same cannot be said for his failure to disclose the sale during his meeting of creditors in response to Plaintiff's questions about transfers of property within two years of the petition date.  Defendant then twice amended his SOFA and twice not only neglected to include both the full amount of the proceeds received from the sale of the Robins Nest Property as well as the closed BoA Account, but also continued to misrepresent that Ms. Cunningham was his "ex wife." [*See* Trial Exs. 2 at 5; 3 at 5].[4]

---

[4] The Court also notes that neither the SOFA, the April 2 Amended SOFA, nor the April 27 Amended SOFA reflect any of the transfers that Defendant testified were made to Ms. Cunningham to "reimburse her" for bills paid, materials purchased, or any other reason after the Robins Nest Property was sold or after Defendant sold the vehicles that were disclosed.  Thus, even if the Court were to find credible Defendant's testimony concerning the $15,000.00 "net" proceeds that he received, his failure to include transfers to his non-filing "ex wife" also establish his continued pattern of not disclosing and inaccurately stating information material to his bankruptcy case.

Defendant's explanations at trial about the net proceeds and the status of the bank account simply were not credible, and his trial testimony created additional inconsistencies. [*See* Trial Exs. 2, 3.] For example, Exhibit 7 shows that as of July 23, 2019, the BoA Account was a joint account between Defendant and Ms. Cunningham and it was not closed until October 31, 2019. Defendant testified at his deposition that the BoA Account was closed "not long after" he and Ms. Cunningham deposited the sale proceeds [*see* Trial Ex. 6 at 23:6-23:7]. Defendant's testimony during his Rule 2004 examination implied that he was only on the BoA Account during the month of July 2019, when he actually was an owner until the account was closed [Trial Ex. 5]. At trial, he testified that he was originally on the account, removed from it, and then added back to it only to deposit the sale proceeds. Also, Defendant testified at trial on May 9, 2022, that he did not look at his bankruptcy documents during the meeting of creditors because he was answering Plaintiff's questions from his truck, but he had acknowledged during his March 2022 deposition that instead of being based on actual facts, his answers at the meeting of creditors were "based off of what I had filled out online, so it would have been inaccurate based on the facts" [*Id*. at 9:9-9:19].

Defendant acknowledged that he read his statements and schedules before signing them, certifying under penalty of perjury that they were true and accurate to the best of his knowledge, and "[t]he importance of having read and being familiar with the information in the petition, schedules, and SOFA should have been abundantly clear to [Defendant,]" especially after he was ordered to attend a Rule 2004 examination and later subpoenaed to appear at a deposition. *In re Blasingame*, 559 B.R. at 698. The Court agrees that "the existence of more than one falsehood, together with [Defendant's] failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless

indifference to the truth and, therefore, the requisite intent to deceive." *Beaubouef v. Beaubouef (Matter of Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *see also Lewis v. Summers (In re Summers)*, 320 B.R. 630, 643 (Bankr. E.D. Mich. 2005) (finding that the debtor was "at best, cavalier" concerning his statements and schedules and was "deliberate in withholding information" and that while one of the inconsistencies alone may not have been enough, "the cumulative effect of these misstatements gives rise to an inference" that debtor acted knowingly and fraudulently made false oaths).

### III.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has met his burden of proof and has satisfied the elements of 11 U.S.C. § 727(d)(1) such that Defendant's discharge entered on January 22, 2021, shall be revoked. A Judgment consistent with this Memorandum will be entered.

FILED:  August 18, 2022

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE